**COMJD**
JESSE SBAIH & ASSOCIATES, LTD.
Jesse M. Sbaih (#7898)
Ines Olevic-Saleh (#11431)
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
Tel   (702) 896-2529
Fax   (702) 896-0529
jsbaih@sbaihlaw.com
iolevic@sbaihlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GOOD FELLAS MARKET,<br><br>            Plaintiff,<br><br>vs.<br><br>AMGUARD INSURANCE COMPANY; DOES I – V and ROES VI – X, inclusive;<br><br>            Defendants. | Case No.:  2:24-cv-02216-CDS-MDC<br><br>**[Proposed] PLAINTIFF'S FIRST AMENDED COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**<br><br>**&**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff Good Fellas Market ("Good Fellas" or "Plaintiff"), by and through its attorneys of record, Jesse Sbaih & Associates, Ltd., and hereby complains, avers and alleges as follows:

**I.**

**PARTIES**

1.      At all times relevant herein, Good Fellas Market was a Nevada entity doing business in the County of Clark, State of Nevada.

2.      Plaintiff is informed and believes and thereon alleges that Defendant AmGuard Insurance Company ("AmGuard") is and was a corporation authorized to engage in the business of insurance, is

engaged in and doing business in the State of Nevada and was specifically conducting such insurance business at all times relevant herein.

3. Based on information and belief, at all relevant times, AmGuard and DOES I – V and ROES VI – X, inclusive (collectively "Defendants") were the partners, joint ventures, agents, co-conspirators, servants, and employees of each of the other Defendants herein, and were acting at all relevant times within the scope, purpose and authority of said partnership, joint venture, agency, service, employment, and conspiracy, and with the knowledge, consent, permission, acquiescence, and ratification of their co-defendants.

4. Plaintiff is informed and believes, and thereon alleges, that all Defendants are the alter egos of one another, despite their respective registration with the secretaries of state in which the Defendants are incorporated or registered in that, inter alia, all the Defendants have common officers, members and directors, and owners. Adherence to the separate existence of these Defendants as an entity distinct from one another would permit an abuse of corporate privilege and would sanction a fraud in common.

5. The true names and capacities, whether individual, corporate, associate or otherwise of other Defendants hereinafter designated as Does I-V and Roes VI-X, inclusive, who are in some manner responsible for the injuries described herein, are unknown to Plaintiff at this time who therefore sue said Defendants by such fictitious names and will seek leave of the Court to amend this Complaint to show their true names and capacities when ascertained.

**II.**

**GENERAL FACTUAL ALLEGATIONS**

6. Plaintiff repeats and realleges all the allegations contained in Paragraphs 1 through 5 of the Complaint as though fully set forth herein.

7. On or about July 26, 2022, Good Fellas Market operated a retail business that provided the public with a convenient location to quickly purchase a wide variety of consumable products and services such as food and drinks.

8. On or about July 26, 2022, due to no fault of its own, Good Fellas Market suffered extensive damage due to a fire in the building where it was located (the "Fire Loss")

9. At the time of the Fire Loss, Plaintiff was insured under Businessowner's Policy Number GOBP374936 (the "Insurance Contract").

10. Under the Insurance Contract, Plaintiff was insured for, among other things, the following coverages: Business Personal Property, Equipment Breakdown, Spoilage, Damage to Premises Rented to You, Fire Department Service Charge, Fire Extinguisher Systems Recharge Expense, Glass Expense, Personal Effects, Outdoor Signs, Loss of Earnings, and Loss of Business Income (the "Insurance Coverages").

11. Due to the Fire Loss, Good Fellas Market remained closed until the end of August 2024.

**12. From approximately July 26, 2022 until approximately August 16, 2024, Good Fellas Market (through its agents) attempted to work with AmGuard without the assistance of counsel.**

**13. During that time period, Good Fellas Market (through its agents) made numerous demands to AmGuard to pay it insurance benefits available under the Insurance Contract.**

**14. On or about August 27, 2024, Defendant advised Plaintiff's counsel that it made the following payments under the Insurance Contract:**

$5,000 #16583 issued on 9/1/2022 - Business personal property

$5,000 #16582 issued on 9/1/2022 - Business income

$20,000 #17420 issued on 10/26/2022 - Business personal property

$9,998.19 #17669 issued on 11/21/2022 - Debris removal

$11,049.83 #18084 issued on 2/9/2023 - Business income

$1,128.75 # 009911069 issued on 8/29/2023 – Spoilage

**15. On or about August 27, 2024, Plaintiff's counsel requested that Defendant provide Plaintiff with a copy of the entire claim file.**

16. On September 5, 2024, Plaintiff's counsel, once again, requested that Defendant provide Plaintiff with a copy of the claim file.

17. On September 6, 2024, Defendant advised Plaintiff's counsel that it was in the process of gathering "all the documents."

18. On or around September 26, 2024, Defendant failed to provide Plaintiff with the entire claim file as requested and only provided Plaintiff some documents relating to the claim.

19. On or about October 9, 2024, Plaintiff's counsel requested that Defendant to the following questions:

    -On the Dec. Page, there is coverage for "Equipment Breakdown Coverage."  What are the limits?

    -On the Dec. Page, there is $100,000.00 coverage for "Damage To Premises Rented To You."  How much of this coverage was paid, if any?

    -On the Dec. Page, there is $250,000.00 coverage for "Business Personal Property."  The same coverage appears in the NV Policy Customizations endorsement.  How much of this coverage was paid, if any?

    -On the Dec. Page, there is $5,000.00 coverage for "Personal Effects."  How much of this coverage was paid, if any?

    -On the NV Policy Customizations endorsement, there is $500.00/day coverage for "Loss of Earnings."  How much of this coverage was paid, if any?

20. On October 9, 2024, Defendant responded to Plaintiff's questions by stating the following:

    *-On the Dec. Page, there is coverage for "Equipment Breakdown Coverage." What are the limits?*

**Equipment breakdown coverage applies to damage to property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment. Fire is excluded as a covered cause of loss.**

    *-On the Dec. Page, there is $100,000.00 coverage for "Damage To Premises Rented To You." How much of this coverage was paid, if any?*

**This policy limit is for liability claims only. Does not apply for this loss.**

    *-On the Dec. Page, there is $250,000.00 coverage for "Business Personal Property." The same coverage*

*appears in the NV Policy Customizations endorsement. How much of this coverage was paid, if any?*

**This coverage is for BPP that is newly acquired at any location that is newly acquired. Does not apply for this loss.**

*-On the Dec. Page, there is $5,000.00 coverage for "Personal Effects." How much of this coverage was paid, if any?*

**This coverage applies to BPP that is owned by the insured but not used for the business. Nothing was paid under this coverage.**

21. In response, on October 11, 2024, Plaintiff's counsel wrote Defendant the following:

I hope all is well. Our response and additional concerns are in bold.

*-On the Dec. Page, there is coverage for "Equipment Breakdown Coverage." What are the limits?*
Equipment breakdown coverage applies to damage to property caused by or resulting from a mechanical breakdown or electrical
failure to pressure, mechanical or electrical machinery and equipment. Fire is excluded as a covered cause of loss. **Please provide policy language that excludes fire as a cause of loss.**
*-On the Dec. Page, there is $100,000.00 coverage for "Damage To Premises Rented To You." How much of this coverage was paid, if any?*
This policy limit is for liability claims only. Does not apply for this loss. **This is a blatant misrepresentation. This coverage is for damage to fixtures and improvements inside the premises. It appears that Guard willfully withheld the availability of this coverage to its insured for its financial benefit. As the premises was completely destroyed by the fire incident, we hereby demand that Guard tender the $100,000.00 available under this coverage on or before October 18, 2024.**
*-On the Dec. Page, there is $5,000.00 coverage for "Personal Effects." How much of this coverage was paid, if any?*
This coverage applies to BPP that is owned by the insured but not used for the business. Nothing was paid under this coverage. **Did Guard advise its insured of the availability of this coverage? As the premises was completely destroyed by the fire incident and our clients had personal effects inside the store, we hereby demand that Guard tender the $5,000.00 available under this coverage on or before October 18, 2024.**
*-On the Dec. Page, there is $5,000.00 coverage for "Money and Securites."* **Did Guard advise its insured of the availability of this coverage? We hereby demand that Guard tender the $5,000.00 available under this coverage on or before October 18, 2024.**
*-On the Dec. Page, there is $5,000.00 coverage for "Outdoor Signs"* **Did Guard advise its insured of the availability of this coverage? We hereby demand that Guard tender the $5,000.00 available under this coverage on or before October 18, 2024.**
*-On the Dec. Page, there is $10,000.00 coverage for "Spoilage." However, Guard only paid $1,128.75?* **We hereby demand that Guard tender the remaining $8,871.25 available under this coverage on or before October 18, 2024.**
*-On the Dec. Page, there is $25,000.00 coverage for "Fire Department Service Charge." Did Guard advise its insured of the availability of this coverage and adjust the claim for said coverage?*
*-On the Dec. Page, there is $5,000.00 coverage for "Fire Extinguisher Systems Recharge Expense." Did Guard advise its insured of the availability of this coverage and adjust the claim for said coverage?*
**-The subject store was not re-opened until a couple of months ago. Please provide all policy language relating to Business Income and documentation as to how the Business Income was calculated from the date of loss until the store was re-opened.**

**22.** On October 15, 2024, Defendant advised that "[w]e are acknowledging receipt of your demands. After review, a representative will reach out to you."

**23.** On October 22, 2024, Plaintiff's counsel wrote Defendant the following:

> **Anthony...I hope all is well. To date, we have not received a response to our October 11, 2024 email. As you know, Guard Insurance has an ongoing obligation to adjust and resolve the claim in good faith and to timely communicate with us. Unless we hear from you immediately, we will have no choice but to proceed with filing a bad faith action against Guard Insurance.**
>
> **I look forward to your response and prompt attention to this matter.**

**24.** In response, on October 22, 2024, Defendant stated the following:

> **As I just explained over the phone. This claim has been assigned to our legal team for further handling. We understand that you would prefer to resolve this matter without filing suit. I will relay this message to our legal team, and we will follow up with next steps.**

**25.** On November 5, 2024, after not hearing from Defendant and/or its counsel, **Plaintiff filed the civil action against Defendant in the District Court, Clark County, Nevada.**

**26.** In adjusting Plaintiff's claim, AmGuard made numerous misrepresentations to Plaintiff regarding the availability of Insurance Coverages, whether the Insurance Coverages apply to the Fire Loss, and the amount of benefits Plaintiff is entitled to under the Insurance Contract.

**27.** For Example, when Plaintiff sought benefits under the Damage to Premises Rented to You, AmGuard misrepresented to Plaintiff that the subject coverage only applies "to liability."

**28.** To date, despite repeated requests, AmGuard has refused and continues to refuse to pay Plaintiff benefits available under the Insurance Contract.

### FIRST CLAIM FOR RELIEF

(Breach of Contract)

**29**. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through **28** as though fully set forth herein.

**30**. The Insurance Contract was in force and effect at the time of the Fire Loss.

31. The Insurance Contract was issued through AmGuard.

32. Said policy included provisions for the Insurance Coverages.

33. Insurance Coverages claims are of a contractual nature.

34. To date, despite repeated requests and Plaintiff demonstrating legal entitlement, AmGuard has refused and continues to refuse to pay Plaintiff benefits available under the Insurance Contract.

35. Plaintiff brings this cause of action against AmGuard to recover benefits under the Insurance Contract in an amount well in excess of Fifteen Thousand Dollars ($15,000.00).

36. As a direct and proximate result of AmGuard's wrongful and illegal conduct, Plaintiff had to retain attorneys to prosecute this action, and therefore is entitled to an award of reasonable attorney's fees and costs.

## SECOND CLAIM FOR RELIEF

(Breach of the Implied Covenant of Good Faith and Fair Dealing- Common Law Bad Faith)

37. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 35 as though fully set forth herein.

38. **The Insurance Contract between Plaintiff and Defendant contains an implied covenant of good faith and fair dealing.**

39. AmGuard, by virtue of its special relationship with Plaintiff under the Insurance Contract, owed Plaintiff duties of honesty, loyalty, care, and professional conduct.

40. By virtue of the acts described in this Complaint, AmGuard breached its duties to Plaintiff.

41. **To date, Defendant has, without reasonable basis, refused to pay Plaintiff insurance benefits available under the Insurance Coverages which include, but not limited to: Business Personal Property, Equipment Breakdown, Spoilage, Damage to Premises Rented to You, Fire**

**Department Service Charge, Fire Extinguisher Systems Recharge Expense, Glass Expense, Personal Effects, Outdoor Signs, Loss of Earnings, and Loss of Business Income.**

42. **Defendant's refused to pay insurance benefits to Plaintiff with knowledge of the lack of reasonable basis to do so or with reckless disregard to the unreasonableness of its decision to refuse to pay.**

43. As a direct and proximate result of AmGuard's breach of its duties, Plaintiff sustained general, special, and consequential damages in excess of $15,000.00.

44. The extreme and outrageous conduct described herein was malicious and oppressive sufficient to justify an award of punitive damages under NRS 42.005 in an amount in excess of $15,000.00.

45. As a direct and proximate result of AmGuard's wrongful and illegal conduct, Plaintiff had to retain attorneys to prosecute this action, and therefore is entitled to an award of reasonable attorney's fees and costs.

### THIRD CLAIM FOR RELIEF

(Unfair Claim Practices)

46. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through **45** as though fully set forth herein.

47. An insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in NRS 686A.310(1).

48. AmGuard, in its dealings with Plaintiff, violated numerous provisions of NRS 686A.310(1) including, but not limited to, the following:

(a) **In violation of NRS 686A.310(1)(a), misrepresented to Plaintiff, among other things, that** the **Damage to Premises Rented to You coverage only applies "to liability."**

(b) **In violation of NRS 686A.310(1)(b),** AmGuard failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Insurance Contract

**by refusing to pay and/or refusal to explain its denial to pay insurance benefits available under the Insurance Contract;**

(c) **In violation of NRS 686A.310(1)(c),** AmGuard failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the Insurance Contract **by refusing to pay and/or refusal to explain its denial to pay insurance benefits available under the Insurance Contract**;

(d) **In violation of NRS 686A.310(1)(d), AmGuard failed to affirm or deny coverage within a reasonable time of Plaintiff's demand for payments of benefits Plaintiff showed legal entitlement under the Insurance Contract because, to date, Defendant has refused to pay and/or refused to explain its denial to pay of insurance benefits available under the Insurance Contract**;

(e) **In violation of NRS 686A.310(1)(e), AmGuard failed to effectuate prompt, fair, and equitable settlement of the claim after Plaintiff demonstrated legal entitlement to insurance benefits available under the Insurance Contract and by attempting to deceive the Plaintiff into believing that the Insurance Coverages did not apply to the Fire Loss**;

(f) **In violation of NRS 686A.310(1)(f),** AmGuard compelled Plaintiff to institute this litigation to recover amounts due under the Insurance Contract and Nevada law;

(g) **In violation of NRS 686A.310(1)(g),** AmGuard attempted to settle Plaintiff's claim for less than the amount to which a reasonable person would have believed he or he was entitled; and

(h) **In violation of NRS 686A.310(1)(n),** AmGuard failed to provide promptly to Plaintiff a reasonable explanation of the basis in the Insurance Contract and/or Nevada law for the failure to pay benefits under the Insurance Contract.

49. As a direct and proximate **result** of the above unfair claims practices of AmGuard, Plaintiff has sustained general, special, and consequential damages in an amount in excess of $15,000.00.

50. The extreme and outrageous conduct described herein was malicious and oppressive sufficient to justify an award of punitive damages under NRS 42.005 in an amount in excess of $15,000.00.

51. It was necessary for Plaintiff to retain the services of an attorney to file this action. Therefore, Plaintiff is entitled to an award of reasonable attorney's fees and costs of suit.

### FOURTH CAUSE OF ACTION

(Declaratory Relief)

52. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through **51** as though fully set forth herein.

53. The Insurance Contract sets forth the respective rights and obligations of the various parties.

54. Plaintiff is entitled to a declaration from this Court that AmGuard failed to honor its obligations under the subject Insurance Contract by, among other things, unreasonably refusing to pay insurance benefits under the Insurance Contract for the Fire Loss; and that AmGuard is liable for all damages inflicted by its wrongful conduct and refusal to abide by the terms of the subject insurance policy.

55. Plaintiff has been compelled to engage the services of an attorney to prosecute this action and, as special damages, is entitled to an award of attorney's fees and costs incurred herein.

**WHEREFORE,** Plaintiff prays for judgment against Defendant as follows:

    a. For compensatory damages in a sum according to proof at trial;

    b. For special damages in a sum according to proof at trial;

    c. For punitive damages in a sum according to proof at trial;

    d. For a declaration that Defendant breached its obligations under the Insurance Contract;

    e. For interest and pre-judgment interest at the statutory rate until the amount of judgment is paid in full;

    f. For attorney's fees and costs of suit incurred; and

    g.    For such other and further relief as the Court may deem appropriate.

DATED this ____day of _____, 2025.

JESSE SBAIH & ASSOCIATES, LTD.

By    /s/ *Jesse M. Sbaih*_____
Jesse M. Sbaih (#7898)
Ines Olevic-Saleh (#11431)
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
*Attorneys for Plaintiff*

## **PLAINTIFF'S DEMAND FOR JURY TRIAL**

Plaintiff Good Fellas Market, by and through the law firm of Jesse Sbaih & Associates, Ltd., hereby demands a jury trial of all issues in the above-captioned matter.

DATED this ___day of _____, 2025.

JESSE SBAIH & ASSOCIATES, LTD.

By    /s/ *Jesse M. Sbaih*_____
Jesse M. Sbaih (#7898)
Ines Olevic-Saleh (#11431)
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP Rule 5(b), I certify that I am an employee of the law firm of Jesse Sbaih & Associates, Ltd., and that on this ____day of _____2025, I caused **PLAINTIFF'S FIRST AMENDED COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES & DEMAND FOR JURY TRIAL** to be served via electronic service upon the Court's Registered Service List for the above-referenced case.

                                        /s/ *Ines Olevic-Saleyh*
                                        An employee of Jesse Sbaih & Associates, Ltd.