UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Good Fellas Market,<br>Plaintiff<br>v.<br>AmGuard Insurance Company,<br>Defendant | Case No. 2:24-cv-02216-CDS-MDC<br>**Order Granting in Part the Defendant's Motion for Summary Judgment and Striking the Plaintiff's Cross Motion for Summary Judgment**<br>[ECF Nos. 27, 29] |

This is an insurance dispute between plaintiff Good Fellas Market and defendant AmGuard Insurance Company. *See* First am. compl., ECF No. 18. Good Fellas seeks recovery for breach of contract and several related claims arising out of an insurance policy. *Id.* AmGuard moves for summary judgment. Def.'s mot. for summ. j., ECF No. 27.[1] Good Fellas is opposed and also moves for summary judgment.[2] Opp'n, ECF No. 28; Pl.'s mot. for summ. j., ECF No. 29.[3] As set forth in this order, AmGuard's motion for summary judgment is granted in part, and Good Fellas' motion is stricken as untimely.

## I. Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is

[1] This motion is fully briefed. *See* Opp'n, ECF No. 28; Reply, ECF No. 30.

[2] Good Fellas filed the same document twice: once as its opposition and once as its countermotion for summary judgment. I treat the first document, ECF No. 28, as an opposition, and the second document, ECF No. 29, as a countermotion.

[3] This motion is fully briefed. *See* Opp'n, ECF No. 31; Reply, ECF No. 32; Errata, ECF No. 33. AmGuard opposes the motion and requests to strike it or, alternatively, deny it. ECF No. 31.

inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

## II. Background

### A. The pleadings

As alleged in the amended complaint,[4] Good Fellas operated a retail business that provided the public with a convenient location to quickly purchase a wide variety of consumable products and services such as food and drinks. ECF No. 18 at 2, ¶ 7. It is undisputed that around July 26, 2022, Good Fellas Market suffered extensive damage due to a fire in the building where it was located. *Id.* at 3, ¶ 8.

There is also no dispute that at the time of the fire, Good Fellas was insured through AmGuard under Businessowner's Policy Number GOBP374936 (the Policy). *Id.* at ¶ 9; *see also* Pl.'s Ex. 3, ECF No. 28-3. As alleged in the complaint, Good Fellas insurance coverage included: business personal property, equipment breakdown, spoilage, damage to the rented premises, fire department service charge, fire extinguisher systems recharge expense, glass expense, personal effects, outdoor signs, loss of earnings, and loss of business income. *Id.* at 3, ¶ 10. Good Fellas alleges that after numerous attempts to communicate with AmGuard, AmGuard failed to pay Good Fellas' insurance benefits available under the coverages for equipment breakdown, damage

[4] Citations to the amended complaint are to provide background. Unless otherwise noted as undisputed, the citations do not serve as a finding of fact.

to its rented premises, personal effects, money and securities, outdoor signs, spoilage, fire department service charge, fire extinguisher systems recharge expense, and loss of business income. *Id.* at 3–6, 8, ¶¶ 12–25, 42.

Thereafter, Good Fellas initiated this action, alleging that AmGuard's refusal to pay the benefits available under the Policy makes AmGuard liable for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair claim practices claims. *See* ECF No. 18.

AmGuard now moves for summary judgment in its favor, arguing that Good Fellas is unable to show a genuine issue of material fact because (1) Good Fellas did not commence litigation until more than two years after the fire, making its claim untimely; and (2) Good Fellas did not assert its eligibility for the benefits it now challenges during the claim-handling process. ECF No. 27 at 5.

AmGuard further contends that there's no evidence to create any genuine issue of material fact showing Good Fellas was eligible for the challenged benefits under the Policy. *Id.* at 2. Specifically, AmGuard argues that there is no evidence because Good Fellas purchased limited insurance for its retail only convenience store that was operated out of a leased premises, the structure of which was not subject to the insurance Good Fellas purchased. *Id.* AmGuard asserts that it paid all benefits more than two years before the building repairs were complete to permit the plaintiff to resume its business. *Id.* AmGuard's position is that because Good Fellas cannot produce admissible evidence to prove various elements of each of its stated causes of actions, summary judgment is appropriate. *Id.*

In opposition, Good Fellas argues that its complaint was timely because equitable tolling applies. ECF No. 28 at 4. It also clarifies that it is not seeking to recover any additional benefits under the coverage for business personal property or for the rented premises. *Id.* It further contends that AmGuard acted in bad faith by not informing the plaintiff of the availability of various coverages and unreasonably and oppressively refusing to pay the plaintiff thousands of dollars for lost business income, spoilage, outdoor signs, money and securities, personal effects,

fire extinguisher system coverage, and equipment breakdown. *Id.* at 2–3, 5–19. Good Fellas avers that there is no dispute that AmGuard owes the plaintiff the sum of $73,723.86. *Id.* at 3.

In reply, AmGuard argues that the entirety of the plaintiff's opposition is based on references to either inadmissible or previously undisclosed information, and that Good Fellas' conclusory assertion that equitable tolling applies fails. ECF No. 30 at 2–3. As a result, AmGuard asserts that its motion for summary judgment should be granted. *See id.*

### B. The Policy

AmGuard issued an insurance policy on Good Fellas' building located at 4955 E. Craig Rd., Las Vegas, NV 89115. Insurance Policy, Pl.'s Ex. 3, ECF No. 28-3 at 2, 63.[5] The policy period ran from February 9, 2022, to February 9, 2023. ECF No. 28-3 at 63. The Policy covered up to $25,000.00 for business personal property; $5,000.00 for outdoor signs; $10,000 for spoilage; $5,000 for personal effects; $25,000 for fire department service charges; $5,000 for fire extinguisher systems recharge expenses; and $75,000 for business income. *Id.* at 64–65, 67, 111. The policy also provided equipment breakdown coverage. *Id.* at 64.

### C. Communications between the parties related to the claim

On August 29, 2023, a property claims associate for AmGuard, Anthony Cortina, emailed Good Fellas, informing Good Fellas that its settlement check was approved and that he was closing the file because "payment had been issued." Corresp., Def.'s Ex. 3, ECF No. 27-3 at 3. That message also shows that Good Fellas received $1,128.75 for "spoilage." *Id.*

On January 4, 2024, Cortina explained that no additional payments could be paid for Good Fellas' claim because although "[t]he insured[']s business . . . remained closed due to the building not being repaired," the building was "not the insureds covered property." *Id.* at 2.

[5] Both AmGuard and Good Fellas attached the Policy as an exhibit to their briefing. *Compare* ECF No. 27-1, *with* ECF No. 28-3. Although I cite Good Fellas' exhibit throughout this order for consistency, any citation to Good Fellas' exhibit when the burden of proof is on AmGuard should be construed as a citation to AmGuard's exhibit.

Around August 16, 2024, Good Fellas faxed an unspecified document to AmGuard. *See* ECF No. 27-4 at 2.

On August 19, 2024, Good Fellas' counsel emailed AmGuard to discuss the claim. Aug. 19, 2024 corresp., Def.'s Ex. 4, ECF No. 27-4 at 2. On August 27, 2024, Cortina emailed Good Fellas and confirmed that AmGuard had issued payments under the Policy. *See* Aug. 28, 2024 email corresp., Def.'s Ex. 2, ECF No. 27-2 at 6. These payments included:

- $5,000.00 issued on September 1, 2022, for business personal property
- $5,000.00 issued on September 1, 2022, for business income
- $20,000.00 issued on October 26, 2022, for business personal property
- $9,998.19 issued on November 21, 2022, for debris removal
- $11,049.83 issued on February 9, 2023, for business income
- $1,128.75 issued on August 29, 2023, for spoilage

*Id.* at 6.

On October 9, 2024, Good Fellas' counsel emailed AmGuard to inquire about the limits for certain coverages on the declarations page of the Policy. *Id.* at 2. That same day, Cortina responded. Oct. 9, 2024 Corresp., Def.'s Ex. 5, ECF No. 27-5 at 2–4. The questions and answers were as follows:

– **On the Dec. Page, there is coverage for "Equipment Breakdown Coverage." What are the limits?**

  Equipment breakdown coverage applies to damage to property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment. Fire is excluded as a covered cause of loss.

- **On Dec. Page, there is $100,000.00 coverage for "Damage To Premises Rented To You." How much of this coverage was paid, if any?**

  This policy limit is for liability claims only. Does not apply for this loss.[6]

- **On the Dec. Page, there is $250,000.00 coverage for "Business Personal Property." The same coverage appears in the NV Policy Customizations endorsement. How much of this coverage was paid, if any?**

  This coverage is for the BPP that is newly acquired at any location that is newly acquired. Does not apply for this loss.

- **On the Dec. Page, there is $5,000.00 coverage for "Personal Effects." How much of this coverage was paid, if any?**

  This coverage applies to BPP that is owned by the insured but not used for the business. Nothing was paid under this coverage.[7]

- **On the NV Policy Customizations endorsement, there is $500.00/day coverage for "Loss of Earnings." How much of this coverage was paid, if any?**

  This applies to liability claims only. Does not apply for this loss.

*Id.* (emphases added). Two days later, Good Fellas again emailed AmGuard with inquiries; however, that email was not attached to either motion. *See* Dep., Def.'s Ex. 6, ECF No. 27-6 at 10.

**D. The depositions**

Cortina was deposed regarding his handling of Good Fellas' claim. ECF 27-6; Dep., Pl.'s Ex. 7, ECF No. 28-7. During Cortina's deposition, he explained that the insurance Good Fellas purchased was limited to certain benefits for only certain items located at the business. ECF No.

---

[6] In his deposition, Cortina explained that for liability claims for third-party damages, only the third party, not the insured, could benefit from the $100,000 limit if there is covered damages under the coverage policy. Excerpt from Anthony Cortina's dep., Def.'s Ex. 6, ECF No. 27-6 at 6.

[7] Cortina explained during his deposition that the items listed on the insured's inventory list were not items that were not used for the business. ECF No. 27-6 at 9. Under the policy terms, conditions, and definitions, Cortina concluded that there was no loss to personal effects. *Id.* at 10.

27-6 at 22–23, 27–28. He further explained that processing a claim involves obtaining as much information as possible regarding the damages and items being claimed and verifying those damages and the cause of loss. ECF No. 27-6 at 13. Additionally, Cortina explained that while another adjuster, Raphael & Associates, conducted its own investigation and found potential coverages for items not contained in the Policy, it is the Policy, and not another adjuster's report, that controls what coverages are available. *Id.* at 19–20.

Luay Alkhouri was deposed in his capacity as Good Fellas' corporate representative and in his individual capacity. Dep., Def.'s Ex. 7, ECF No. 27-7 at 2; Dep., Pl.'s Ex. 4, ECF No. 28-4 at 2. Notably, Alkhouri testified about what both he and Good Fellas lost because of the fire. ECF No. 28-4 at 4–24. He also testified that AmGuard failed to inform Good Fellas about several available coverages under the Policy and that AmGuard failed to pay benefits under those coverages.[8] *Id.*

## III. Discussion

As a threshold matter, I address AmGuard's request to strike Good Fellas countermotion for summary judgment. ECF. No. 31 at 3. AmGuard argues that Good Fellas' countermotion should be stricken as untimely as it was filed three weeks after the deadline for dispositive motions. *Id.* Good Fellas opposes the request, citing *Bank of New York Mellon v. Nevada Association Services*, 2020 WL 1018552, at *8 (D. Nev. Mar. 2, 2020),[9] to ask that I apply similar rationale and

---

[8] AmGuard repeatedly avers that Alkhouri cannot create a genuine issue of material fact because he lacks the foundation to give testimony regarding coverage under the Policy. ECF No. 27 at 6, 8; ECF No. 30 at 2, 8, 11. AmGuard's argument misses the mark. First, AmGuard assumes that Good Fellas had to provide testimony of someone interpreting the Policy for this court to interpret the Policy. That is not so. Contract interpretation is a question of law. Further, AmGuard fails to identify any reason why Alkhouri cannot testify to facts within his or Good Fellas' personal knowledge, such as what items were lost and what information AmGuard communicated to Good Fellas.

[9] Good Fellas cites to the following language from *Bank of New York Mellon v. Nevada Association Services*:

> [G]enerally, the deadline for dispositive motions may only be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). However, "[w]here a court determines that it would be more efficient—not just for the parties but particularly for the court—to consider a belated motion for summary judgment rather than strike it, the Rule 16 'good cause' requirement does not stand in the way."

*See* ECF No. 32 at 2 (emphasis removed).

find that there is good cause under Federal Rule of Civil Procedure (FRCP) 16(b) to extend the deadline because it would be more efficient to consider the countermotion, and because AmGuard was able to "fully oppose" the countermotion and "has not demonstrated any prejudice as a result of Plaintiff's tardy filing." ECF No. 32 at 3.

The deadline for dispositive motions was indeed October 3, 2025. Scheduling order, ECF No. 24. Good Fellas did not file its countermotion until October 24, 2025. Mot., ECF No. 29. While Good Fellas asks that I apply the reasoning in *Bank of New York Mellon*, it offers no explanation as to why its motion was untimely. Rather, it merely cites non-controlling authority where another court previously considered an untimely motion for summary judgment. A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). And courts have previously denied dispositive motions for being untimely. *See, e.g.*, *First 100 LLC v. Bank of Am., N.A.*, 2017 U.S. Dist. LEXIS 154918, at *8–9 (D. Nev. Sep. 21, 2017) (denying cross-motion for summary judgment as moot but explaining that the court would have denied the motion as untimely because it was filed after the dispositive-motion deadline); *Borenstein v. Animal Found.*, 2024 U.S. Dist. LEXIS 192283, at *10 (D. Nev. Oct. 22, 2024) (denying untimely motion for summary judgment); *Stokes v. Olympian Leisure Servs.*, 2024 U.S. Dist. LEXIS 80037, at *8 (D. Nev. May 1, 2024) (striking untimely cross-motion for summary judgment); *Frenso Rock Taco, LLC v. Nat'l Sur. Corp.*, 2013 U.S. Dist. LEXIS 132952, at *39 (E.D. Cal. Sep. 16, 2013) (denying untimely motion to dismiss).

Indeed, while the court has the discretion to excuse Good Fellas' untimely motion, I decline to do so because it failed to provide any explanation for its untimeliness, and because Good Fellas filed an opposition (ECF No. 28) that mirrors its countermotion. Thus, I still consider those arguments raised in its opposition.[10] Accordingly, the motion to strike Good Fellas' counter summary judgment motion is granted.

---

[10] However, Good Fellas raises two arguments in its motion for summary judgment not raised in AmGuard's motion. Specifically, Good Fellas contends that it was entitled to $2,800.09 under the coverage for outdoor signs and $5,000 under the coverage for money and securities. ECF No. 28 at 10–12.

Turning to the merits of AmGuard's summary judgment motion, it makes three primary arguments: (1) Good Fella's complaint is untimely, (2) the evidence shows AmGuard is entitled to summary judgment on each of the substantive claims, and (3) Good Fellas fails to demonstrate punitive damages are warranted. I address each argument in turn.

**A. Good Fellas' complaint was timely.**

Good Fellas contends that while the Policy provides that an action must be brought within two years from when the direct loss or damage occurred, "under Nevada law, 'a period of limitations imposed in an insurance policy . . . is tolled from the time the insured gives notice of the loss until the insurer "formally denies liability."'" ECF No. 28 at 4 (emphasis removed) (citing *Kearns v. Liberty Ins. Corp.*, 729 F. Supp. 3d 1078, 1082 (D. Nev. 2024)). According to Good Fellas, AmGuard never sent Good Fellas a denial letter, so the November 5, 2024 complaint is timely. ECF No. 28 at 4. In the alternative, Good Fellas argues that, in the event AmGuard's final payment and Cortina's August 29, 2023 email about closing the file constitutes a denial of insurance benefits, it timely filed its complaint within two years of that date. *Id.* at 4–5.

Nevada law permits an insurer to protect itself from "remote claims" by "implementing explicit, unambiguous time limitations in its insurance contracts." *State Farm Mut. Auto. Ins. Co. v. Fitts*, 99 P.3d 1160, 1162 (Nev. 2004). Nevertheless, Nevada construes an insurance contract's limitations period as beginning *not* on the date of the loss, but the date of the insurer's formal denial of liability. *See Walker*, 836 P.2d 59, 62 (Nev. 1992). Thus, the limitations period begins at formal denial because if it were "strictly construed" as the date of the loss as specified in the contract, "then the entire period could . . . be consumed by the built-in delays of the policy and by the time in which the parties attempt to negotiate the claim." *Id.* (quoting *Clark v. Truck Ins. Exch.*, 598 P.2d 628, 629 (Nev. 1979)).

---

Because AmGuard has not sought summary judgment on those grounds, I do not address Good Fellas' arguments related to those coverages in this order and they will remain live for trial.

Applying that precedent, the contractual time limitation here was tolled, despite the "two year" language in the Policy. *See* ECF No. 27-1 at 28. Stated otherwise, Good Fellas had to bring suit two years after the date of final denial, not two years from the date of the loss. *See Walker*, 836 P.2d at 62. Viewing all facts and drawing all inferences in the light most favorable to the nonmoving party, the court construes the final denial date as August 29, 2023, because that is when AmGuard issued a final payment and communicated that it was closing its file. *See* ECF No. 27-3 at 2. Because Good Fellas' complaint was filed within two years of August 29, 2023, it is timely. Accordingly, AmGuard's motion for summary judgment on this ground is denied.

**B. There are genuine issues of material fact as to some of Good Fellas' claims.**

*1. Breach of contract*

To prevail on its breach of contract claim, Good Fellas must establish that (1) a valid contract exists, (2) Good Fellas performed, (3) AmGuard breached, and (4) the breach caused Good Fellas damages. *See Iliescu v. Reg'l Transp. Comm'n of Washoe Cnty.*, 522 P.3d 453, 458 (Nev. Ct. App. 2022). "If a provision in an insurance contract is unambiguous, a court will interpret and enforce it according to the plain and ordinary meaning of its terms." *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011). "The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted." *Id.* (quoting *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1157 (Nev. 2004)). "Because the insurer is the one to draft the policy, an ambiguity in that policy will be interpreted against the insurer." *Id.* "While clauses providing coverage are interpreted broadly so as to afford the greatest possible coverage to the insured, clauses excluding coverage are interpreted narrowly against the insurer." *Id.* (quoting *Nat'l Union Fire Ins. Co. v. Reno's Executive Air*, 682 P.2d 1380, 1383 (Nev. 1984)). "Ultimately, a court should interpret an insurance policy to 'effectuate the reasonable expectations of the insured.'" *Id.* (quoting *Nat'l Union Fire Ins. Co.*, 682 P.2d at 1383).

Because Good Fellas bears the burden of proof at trial, AmGuard only needs to point to an absence of evidence on an element of Good Fellas' case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250–51.

AmGuard contends at summary judgment that Good Fellas must prove benefits were owed, and Good Fellas cannot show that it is eligible for additional insurance benefits. ECF No. 27 at 22. In opposition, Good Fellas avers that AmGuard breached the insurance contract by, among other things, refusing to pay the plaintiff the sum of $73,723.86 in insurance benefits that it "has shown legal entitlement to under the loss of business income, spoilage, outdoor signs, money and securities, personal effects, fire extinguisher system coverage, and equipment breakdown coverages." ECF No. 28 at 20–21.

#### *a. Business Personal Property*

AmGuard asserts that Good Fellas is not entitled to further benefits for business personal property because the limit for that coverage has been exhausted. ECF No. 27 at 6–8. Good Fellas agrees that limit was exhausted and states it is not, nor was it ever, seeking further benefits for business personal property. ECF No. 28 at 4 n.2. The evidence shows that AmGuard paid Good Fellas $25,000, which was the limit for Good Fellas business personal property coverage. ECF No. 27-1 at 64 (providing $25,000 in business personal property coverage); ECF No. 27-2 at 6 (showing that $25,000 was paid to Good Fellas for business personal property); ECF No. 27-6 at 28 (explaining that the business personal property benefits were exhausted). AmGuard is therefore entitled to summary judgment on this ground.

### *b. Premises Rented to You*

AmGuard argues that Good Fellas is not entitled to benefits under the "terms for 'damages to premises rented to you', because those terms only apply to liability claims."[11] ECF No. 27 at 8. Good Fellas asserts that it is no longer seeking those benefits. ECF No. 28 at 4 n.2. The policy reveals that coverage was indeed limited to liability claims. ECF No. 27-1 at 47. AmGuard is therefore entitled to summary judgment for Good Fellas' breach of contract claim as it pertains to the terms for "damages to premises rented to you."

### *c. Personal Effects*

AmGuard argues that Good Fellas is not entitled to benefits under the coverage for "personal effects" because the items Good Fellas sought payment for under that coverage were "tools or equipment used in [Good Fellas'] business" and the Policy specifically excluded coverage for such items. ECF No. 27 at 10–11. In support of that assertion, AmGuard attaches Cortina's testimony stating that he determined the items Good Fellas claimed were "personal effects" were actually "tools or equipment used in the business." ECF No. 27-6 at 9–10. It adds that Cortina's testimony is undisputed. ECF No. 27 at 11.

Meanwhile, Good Fellas argues that it is entitled to $1,600 for the loss of Alkhouri's laptop and speaker as "personal effects." *Id.* at 12. Good Fellas contends that those items were "personal effects" under the Policy because Alkhouri bought them with his own money and those items did not belong to the store. *Id.* at 11–14. And Good Fellas contends, without explanation, that those items were not "tools" or "equipment" and therefore would not fall under the exclusion. *Id.* at 14. Good Fellas, however, attaches Alkhouri's own testimony stating that he used his laptop and speaker at some point for work at the store. ECF No. 28-4 at 9, ¶¶ 10–20; *id.* at 19, ¶¶ 6–14.

---

[11] That provision provides that "[t]he most [AmGuard] will pay under Business Liability Coverage for damages because of 'property damage' to a premises while rented to you or in the case of fire while rented to you . . . is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations." ECF No. 28-3 at 47.

The Policy provided up to $5,000 worth of coverage for "personal effects owned by you, your officers, your partners or 'members', your 'managers' or your employees"—where "you" and "your" refer to Good Fellas, ECF No. 28-3 at 7—but not "[t]ools or equipment used in your business." *Id.* at 19. Meanwhile, the Policy provided up to $25,000 worth of coverage for "business personal property" that "you own that is used in your business." *Id.* at 7.

As an initial matter, I address Good Fellas' argument that the laptop and speaker are not tools or equipment. The Policy does not define "tools" or "equipment." I therefore look to the "plain, ordinary and popular meaning" of those words. *Tompkins v. Buttrum Constr. Co. of Nev.*, 659 P.2d 865, 866 (Nev. 1983). Merriam-Webster defines "tool" as "an instrument or apparatus necessary to a person in the practice of his vocation or profession" or "an implement or object used in performing an operation or carrying on work of any kind." *Tool*, Merriam-Webster's Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/tool (last visited Sep. 22, 2026); *see also Tool*, Oxford Dictionaries, https://premium.oxforddictionaries.com/definition/american_english/tool (last visited Sep. 22, 2026) ("A thing used in an occupation or pursuit"). And it defines "equipment" as "the implements (such as machinery or tools) used in an operation or activity" or "all the fixed assets other than land and buildings of a business enterprise." *Equipment*, Merriam-Webster's Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/equipment (last visited Sep. 22, 2026); *see also Equipment*, Oxford Dictionaries, https://premium.oxforddictionaries.com/definition/american_english/equipment (last visited Sep. 22, 2026) ("The necessary items for a particular purpose"). Considering those definitions, a laptop and speaker are "tools" because they can be used to perform one's work.

Next, I consider whether the laptop and speaker were "used in [Good Fellas'] business." ECF No. 28-3 at 7, 19. Notably, the Policy does not specify how much the tool must be used in the business to be excluded from coverage as a "personal effect." *Id.* at 19. To resolve this inquiry, I "consider the policy as a whole 'to give reasonable and harmonious meaning to the entire policy.'" *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014) (adding that "an insurance

policy's interpretation should not lead to an absurd or unreasonable result"). Two provisions are dispositive. Under the coverage for "business personal property," the Policy covered property belonging to Good Fellas that was used in the business. Meanwhile, under the coverage for "personal effects," the Policy covered personal effects belonging to Good Fellas or its employees so long as they were *not* used in the business. These provisions suggest that items *primarily* used in the business would constitute "business personal property" whereas items *primarily* used for personal purposes would constitute "personal effects." Interpreting the Policy otherwise would lead to the unreasonable result that a personal computer even *once* used to perform a work-related task be deemed "business personal property." Accordingly, Alkhouri's laptop and speaker qualify as "personal effects" so long as they were not *primarily* used in the business.[12]

AmGuard attaches Cortina's testimony stating that the items Good Fellas sought reimbursement for were items used in the business. It also asserts that there is no evidence to the contrary. AmGuard has failed to meet its burden. Good Fellas attached Alkhouri's testimony stating that he used his laptop and speaker for work. While that testimony did not state how frequently he used those items for work, it is sufficient to demonstrate a genuine issue of material fact over whether they were used primarily for work or not. Consequently, AmGuard is not entitled to summary judgment on this ground.

#### *d. Spoilage*

AmGuard contends that Good Fellas is not entitled to further benefits for spoilage because the food items Good Fellas allegedly lost were not perishable as defined by the Policy. ECF No. 27 at 11–13. In opposition, Good Fells contends that it was entitled to benefits because it lost chicken, meat, and fish that cost more than $10,000. *See* ECF No. 28 at 8. It attaches Alkhouri's deposition transcript, in which he testifies that Good Fellas lost approximately

[12] Even if the plain text of the Policy is instead ambiguous on this point, the Policy should be interpreted "broadly to afford the greatest possible coverage to the insured," *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d at 672, which necessitates the same interpretation.

$2,500 in fish, $5,000 in chicken, $3,000 in shrimp, $2,000 in meat, and $5,000 in cheese. ECF No. 28-4 at 13.

The Policy "insure[s] against direct physical loss of or damage to 'perishable stock'" up to $10,000. ECF No. 27-3 at 116. An item is "perishable stock" under the Policy if it must be "[m]aintained under controlled temperature or humidity conditions for preservation; and . . . [is] [s]usceptible to loss or damage if the controlled temperature or humidity conditions change." ECF No. 28-3 at 117. Ultimately, a reasonable jury can decide that the lost items were perishable and thus qualified for coverage under the spoilage provision. AmGuard is therefore not entitled to summary judgment related to the spoilage coverage.

*e. Loss of Business Income*

AmGuard argues that the Policy did not provide lost business income for the time Good Fellas was closed for building repairs because the Policy only covered Good Fellas' business personal property and not the building where the retail store was located. ECF No. 27 at 13–16. Good Fellas, on the other hand, argues that it is entitled to $27,952.52 under the loss-of-business-income coverage, and that AmGuard breached by not providing this payment. ECF No. 28 at 5. To support its argument, Good Fellas relies on Alkhouri's deposition.[13] *Id.* at 6 (citing ECF No. 28-4 at 15–16). Alkhouri testified that the store was closed from July 2022 until August 2024, and that AmGuard paid Good Fellas for its lost business income from July 2022 until April 2023, but not from April 2023 through August 2024. *Id.* He explained that Good Fellas lost $1,745.77 in income per month from April 2023 through August 2024, so AmGuard owes Good Fellas $27,952.52 in lost business income.[14] *Id.*

The policy here provided that AmGuard would "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." ECF No. 28-3 at 7. "Covered Property" meant "Buildings . . . ,

---

[13] Alkhouri appeared during the deposition in his individual capacity and as representative for Good Fellas Market. *See* ECF No. 27-7 at 2.

[14] I note that the sum of $1,745.77 in lost business income over 16 months is $27,932.32, not $27,952.52.

Business Personal Property . . . , or both, depending on whether a Limit of Insurance is shown in the Declarations." *Id.* In the event of building coverage, "the buildings and structures at the premises described in the Declarations" would be covered. ECF No. 28-3 at 7. In the event of business personal property coverage, the "[p]roperty [Good Fellas] own[ed] that [wa]s used in [its] business" would be covered. *Id.* The declarations page shows a limit of insurance for *business personal property* coverage but does not show a limit for *building* coverage. ECF No. 28-3 at 64–65. The policy then provides the following coverage for lost business income:

> **(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage *to property at the described premises*.
>
> . . .
>
> With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:
>
> **(i)** The portion of the building which you rent, lease or occupy; and
>
> **(ii)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

ECF No. 28-3 at 11–12 (emphasis added). Meanwhile, the endorsement for water back-up and sump overflow, a type of coverage not implicated here, provides coverage for "all loss of Business Income [Good Fellas] sustain[s] due to the necessary suspension of [its] 'operations' caused by direct physical loss or damage *to Covered Property*" caused by water back-up and sump overflow. *Id.* at 115 (emphasis added).

As an initial matter, AmGuard is correct that *the building* (i.e., the structure itself) is not "covered property" because there is no building limitation on the declarations page. But the Policy provides that AmGuard will pay for lost business income during a suspension to

operations, *generally*, if it was "caused by direct physical loss of or damage *to property at the described premises*," not to "covered property." ECF No. 28-3 at 11 (emphasis added). However, in the event of lost business income due to water back-up and sump overflow, the Policy explicitly required the lost income be caused by the loss of or damage to "covered property." *Id.* at 115. If AmGuard had intended for *all* lost business income to be covered only if caused by loss of or damage to "covered property," it could have said so. Even more, the Policy explicitly provided that loss of or damage to "[t]he portion of the *building* which you rent, lease or occupy; and . . . [a]ny area within the *building* or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises" can be the basis for lost business income generally. *Id.* at 12 (emphasis added). Read together, the plain text of the Policy unambiguously provides coverage for lost business income caused by suspensions due to direct physical loss or damage to the described premises, including the building itself, regardless of whether the premises is "covered property" unless that lost business income was due to water back-up or sump overflow.

Regardless, even if the Policy is ambiguous, an ambiguity in an insurance policy is interpreted against the insurer, and clauses providing coverage are interpreted broadly to afford the greatest possible coverage to the insured. *Powell*, 252 P.3d at 672. Here, any ambiguity in whether lost business income must be because of direct physical loss of or damage to "covered property" or just to "property at the described premises" should be interpreted against AmGuard and should afford the greatest possible coverage to Good Fellas. Accordingly, even if the Policy is ambiguous, it should be interpreted as providing lost business income to Good Fellas so long as the suspension in operations was caused by direct physical loss of or damage to property at the described premises, not just to covered property.

The premises described on the declarations page is the retail store at 4955 East Craig Road in Las Vegas, and "premises," for purposes of lost business income, is defined as the area of that building that Good Fellas leased. *Id.* at 11, 64. AmGuard does not dispute that Good Fellas' operations were suspended because of damage to its leased premises caused by a fire in that building. Indeed, AmGuard attached deposition testimony demonstrating that Good Fellas was closed for repairs due to the fire. ECF No. 27-6 at 24, ¶¶ 14–22 ("[T]he insured had submitted documentation or e-mail thread from the property manager/landlord regarding when the rebuild or repairs were, I think in this scenario, going to begin, which wasn't until quite some time then after [the fire]."). Accordingly, AmGuard fails to demonstrate that it is entitled to summary judgment on this ground. And even had AmGuard met its burden thereby switching the burden to Good Fellas, Good Fellas attached evidence creating a genuine dispute of material fact as to whether its operations were suspended because of damage to its retail store caused by the fire. ECF No. 28-2 (depicting damage to the retail store); ECF No. 28-4 at 16 (explaining the store was closed from the date of the fire, July 26, 2022, until August 2024). And it provided evidence of how much business income it lost during that period. ECF No. 28-4 at 20–21 (seeking $27,952.52). AmGuard is therefore not entitled to summary judgement for lost business income.

***f. Equipment Breakdown***

AmGuard asserts that Good Fellas was not eligible for additional benefits for equipment breakdown because fire was not one of the enumerated causes of equipment breakdown covered under the Policy and was instead specifically excluded from coverage. ECF No. 27 at 16. Good Fellas disagrees, arguing that the fire exclusion was applicable to only service interruption coverage. ECF No. 28 at 15–16; *see also* ECF No. 27-1 at 97 (stating that service interruption coverage applies to the loss, damage or expense caused by the interruption of utility services).

Within the equipment breakdown endorsement, the Policy states that:

> **1.** [AmGuard] will pay for direct physical damage to Covered Property that is the direct result of an "accident." As used in this Additional Coverage, "accident"

> means a fortuitous event that causes direct physical damage to "covered equipment." The event *must be* one of the following:
>
> **a.** mechanical breakdown, including rupture or bursting caused by centrifugal force;
>
> **b.** artificially generated electrical, magnetic or electromagnetic energy, including electric arcing, that damages, disturbs, disrupts or otherwise interferes with any electrical or electronic wire, device, appliance, system or network;
>
> **c.** explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;
>
> **d.** loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or
>
> **e.** loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

ECF No. 27-1 at 96 (emphasis added). And "[w]ith respect to Service Interruption coverage," the policy provided AmGuard would "not pay for an 'accident' caused by or resulting from . . . fire." ECF No. 27-1 at 98. Considering those provisions, Good Fellas is not entitled to benefits for equipment breakdown. While Good Fellas is correct that the exclusion for fire applied specifically to utility service interruption coverage, *AmGuard* is correct that fire was not one of the enumerated events qualifying for equipment breakdown coverage. AmGuard is therefore entitled to summary judgment on this ground.

#### *g. Proof of Loss*

Seventh, AmGuard argues that Good Fellas failed to provide proof of its losses during claim handling that would trigger the above coverages or the coverages for "Fire Department Service Charge" or "Fire Extinguisher Systems Recharge Expense." ECF No. 27 at 18–19. Good Fellas does not directly address AmGuard's argument and instead asserts that Alkhouri testified that Good Fellas "incurred $2,500.00 for fire extinguishers system as a result of the fire" and that

AmGuard has yet to reimburse Good Fellas for that amount. ECF No. 28 at 15. In reply, AmGuard contends that Good Fellas cannot avoid summary judgment by now referencing information that was not previously disclosed. ECF No. 30 at 7.

The burden to establish coverage under an insurance policy rests with the *insured*. *See Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, 479 P.3d 625, 630 (Nev. 2021). Moreover, the Supreme Court of Nevada has made clear that the consumer has the responsibility of reading the insurance policy. If courts were to presume that consumers do not read their policies, insurers would be forced to verbally explain every minute detail of a policy. *See Farmers Ins. Exch. v. Young*, 832 P.2d 376, 379 n.2 (Nev. 1992). Cortina's testimony aligns with this requirement:

> THE WITNESS: When a loss is – or a claim is assigned and discussing the details regarding it and the damages that have occurred and what is being claimed, I then review the policy and find applicable coverages for this loss – for that loss.
>
> . . .
>
> Q. And then it's your obligation to inform the insured of the availability of that coverage, correct?
>
> . . .
>
> THE WITNESS: Once the damages or the items being claimed are presented, then I find coverage for them.

*See* ECF No. 28-7 at 8. Accordingly, AmGuard is correct that the burden to trigger the above coverages rested with Good Fellas. AmGuard's motion fails, however, because it is wholly unclear whether Good Fellas provided relevant loss information to AmGuard or requested coverage under these provisions. The deposition testimony only establishes that AmGuard did not pay Good Fellas under these provisions. *See, e.g.*, ECF No. 28-4 at 11–13 ("Q.. . . at any point during the claim process, did AmGuard tell you that you have coverage for outdoor signs with limits of $5,000. . . . A. No, sir."); *id.* at 8–10 (stating that Alkhouri had personal items in the store at the time of the fire, but AmGuard never paid for those items, and not stating whether Good

Fellas sought coverage or submitted receipts for those items). And Good Fellas appeared to send further inquiries regarding coverage to AmGuard through its October 11, 2024 email. *See* ECF No. 27-6 at 10. While a close call, the lack of clarity regarding what Good Fellas sought coverage for, together with the extensive claims file and investigation process involving the claim, when viewed in the light most favorable to Good Fellas as the nonmovant, creates a genuine issue of material fact, so I decline to grant summary judgment to AmGuard as to these coverage provisions at this time.[15]

### *2. Breach of implied covenant of good faith and fair dealing*

Nevada recognizes the existence of an implied covenant of good faith and fair dealing in every contract. *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993)). An insurer fails to act in good faith when it refuses "without proper cause" to compensate the insured for a loss covered by the policy. *Id.* (quoting *U.S. Fidelity & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975)). In other words, an insurer acts in *bad* faith if it has "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the policy." *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354–55 (Nev. 1986).

In its summary judgment motion, AmGuard argues that Good Fellas lacks admissible evidence for the required elements to state a cause of action for breach of implied covenant. ECF No. 27 at 22. Citing to *Igartua v. Mid-Century Insurance Co.*, 262 F. Supp. 3d 1050, 1053 (D. Nev. 2017), AmGuard contends that "[a]n insurer does not act in bad faith merely because it disagrees with the claimant's estimation of his injuries or delays paying out benefits until it receives relevant documents or expert opinions." ECF No. 27 at 24.

In opposition, Good Fellas argues that AmGuard willfully and misleadingly did not disclose available coverages to it. ECF No. 28 at 22 (citing ECF No. 28-7 at 7–8, 11, 13–16). It also argues that AmGuard had an ongoing obligation to continue to adjust and resolve its claim in

[15] As set forth in the conclusion, the court is referring this case to a settlement conference. If the case does not settle, the court orders AmGuard to file an additional summary judgment motion pursuant to FRCP 56(f) on these provisions. Further instructions are provided below.

good faith. *Id.* at 23. Good Fellas then conclusively asserts that "the plethora of evidence in this case reveals that AmGuard failed to properly investigate, failed to pay benefits, and failed to disclose insurance coverages to Plaintiff." *Id.*

While a close call, AmGuard is not entitled to summary judgment on this claim. As explained above, it is unclear if AmGuard denied coverage under certain provisions of the Policy because they did not apply or because Good Fellas never sought coverage under those provisions. Depending on what the evidence reveals regarding why coverage was not afforded, Good Fellas could meet its burden showing AmGuard acted in bad faith. "[T]he key to a bad faith claim is whether denial of a claim was reasonable." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003). The court needs more information to make this determination. Accordingly, AmGuard's motion as to the breach of implied covenant of good faith and fair dealing is denied.[16]

### *3. Unfair claim practices*

NRS 686A.310 provides a list of certain actions that constitute unfair practices in settling insurance claims. *See* Nev. Rev. Stat. § 686A.310; *Admiral Ins. Co. v. Kabul, Inc.*, 2026 U.S. Dist. LEXIS 29137, at *18 (D. Nev. Feb. 11, 2026). For example, an insurer commits an unfair claims practice by misrepresenting to an insured "pertinent facts or insurance policy provisions relating to any coverage at issue." Nev. Rev. Stat. § 686A.310(1)(a). Further, an insurer commits an unfair claims practice by failing to provide an insured "a reasonable explanation" for a denial or offer to settle a claim. *Id.* at § 686A.310(1)(n). "No insurer shall be held guilty of having committed any of the acts prohibited by NRS . . . 686A.310 . . . by reason of the act of any agent, solicitor or employee . . . unless an officer, director or department head of the insurer has knowingly permitted such act or has had prior knowledge thereof." *Id.* at § 686A.270.

AmGuard asserts that the undisputed evidence is that the insurer timely evaluated the requests for benefits and promptly paid the amount determined to be owed. ECF No. 27 at 25. AmGuard adds that the remainder of Good Fellas' request for benefits were either never made or

[16] The court orders additional briefing on this issue if this case does not settle.

supported, and if they were made, AmGuard properly disputed any such requests and timely communicated its decisions. *Id.* AmGuard further contends that summary judgment is also required due to plaintiff's lack of admissible evidence for the critical and required element that an officer, director, or department head had prior knowledge of any violation. *Id.*

In opposition, Good Fellas argues that the court should deny summary judgment because it demonstrated a genuine issue of material fact that the knowledge requirement of NRS 686A.270 was met by providing evidence that Cortina was following AmGuard's policies and procedures, "thereby effectively approving the claims mishandling at issue." ECF No. 28 at 23 (citing *My Left Foot Children's Therapy, LLC v. Certain Underwriters at Llyod's London subscribing to Pol'y No. HAH15-0632*, 2021 WL 1093094, at *5 (D. Nev. Mar. 22, 2021)). Said differently, Good Fellas argues that an AmGuard officer, director, or department head had knowledge of Cortina's violations of NRS 686A.310 because such officer, director, or department head approved the policies and procedures Cortina used and those policies were the reason Cortina violated NRS 686A.310. Good Fellas then repeats, without reference to any evidence in the record, the allegations in its complaint asserting that AmGuard violated subsections (b)–(g) and (n) of NRS 686A.310.

"Where, as here, the nonmoving party bears the burden of proof at trial, the moving party may secure summary judgment by '"showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Koi Design LLC v. Marron Laws., APC*, 184 F.4th 1132, 1141 (9th Cir. 2026) (quoting *Celotex*, 477 U.S. at 325)). AmGuard did just that, switching the burden to Good Fellas. It was then Good Fellas' burden to "produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner*, 911 F.3d at 992. But Good Fellas only cites the allegations in its complaint without citing the particular parts of materials in the record supporting those allegations. AmGuard is therefore entitled to summary judgment regarding Good Fellas' claims under NRS 686A.310, and I need not reach the parties' arguments regarding the knowledge requirement under NRS 686A.270. *See*

Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .").

**C. Good Fellas is not entitled to seek punitive damages.**

NRS 42.005 provides for punitive damages "in an action for the breach of an obligation not arising from contract" (e.g., a claim for bad faith) "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." Nev. Rev. Stat. § 42.005(1). Punitive damages are designed "to punish and deter oppressive, fraudulent or malicious conduct." *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev. 1993). To effectuate this goal, "it is incumbent upon the party whose conduct was so outrageous as to merit punishment by means of punitive damages to bear the burden of paying the award." *New Hampshire Ins. Co. v. Gruhn*, 670 P.2d 941, 943 (Nev. 1983). To determine if punitive damages are warranted, the court must determine "whether, as a matter of law, the plaintiff has offered sufficient evidence . . . to support a punitive damages instruction." *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1172 (9th Cir. 2012); *see also Bongiovi v. Sullivan*, 138 P.3d 433, 450–51 (Nev. 2006) (explaining that "[a] plaintiff is not automatically entitled to punitive damages" and instead must first make a showing that the defendant is guilty of oppression, fraud, or malice by clear and convincing evidence). AmGuard argues that the plaintiff fails to cite evidence of malice and conscious disregard as alleged in the complaint. ECF No. 27 at 28. In opposition, Good Fellas asserts that because AmGuard acted in bad faith, a jury should determine punitive damages. ECF No. 28 at 27. In reply, AmGuard argues that Good Fellas presented no evidence for any element of any punitive damages claim. ECF No. 30 at 20. It states that Good Fellas accepted payment without "any assertion or communication of any disagreement" or any assertion "of

eligibility or entitlement to receipt of any of the benefits it references in either its complaint or in opposition to the motion for summary judgment." *Id.*

As an initial matter, "Nevada follows the rule that proof of bad faith, by itself, does not establish liability for punitive damages." *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 198 (Nev. 1989). Good Fellas' argument that it is entitled to punitive damages because AmGuard acted in bad faith fails. Further, at this stage of the litigation, it is the plaintiff's burden to show "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, express or implied." Nev. Rev. Stat. § 42.005(1). Good Fellas could have met this burden through deposition testimony or other discovery, but failed to do so. Consequently, I grant AmGuard's summary judgment motion as to punitive damages.

## IV. Conclusion

IT IS HEREBY ORDERED that AmGuard's motion for summary judgment **[ECF No. 27] is granted in part as set forth in this order.**

IT IS FURTHER ORDERED that Good Fellas' motion for summary judgment **[ECF No. 29] is stricken.**

This case is referred to the magistrate judge for a mandatory settlement conference. If the parties fail to settle, the deadline for their proposed joint pretrial order is stayed until 30 days following the settlement conference; and, within that same 30-day window, AmGuard must file its motion for summary judgment on the breach of contract and bad faith claims pursuant to FRCP 56(f).

Dated: September 23, 2026

_______________________________
Cristina D. Silva
United States District Judge